UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Crim No.: 15-cr-198-GZS |
| SAL MANSY ) | |
| TV TOYZ LLC ) | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BECAUSE 18 U.S.C. § 1960 IS UNCONSTITUTIONALLY VAGUE AS APPLIED AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Mr. Sal Mansy and TV Toyz LLC, the defendants, through undersigned counsel, respectfully moves this Honorable Court to dismiss Count One of the superseding indictment. This count allege that Defendants violated 18 U.S.C. § 1960 by unlawfully operating a money service business. This statute is unenforceable as written. Prosecuting Mr. Mansy under this statute violates the fair notice requirements of the Due Process clause because multiple terms contained in § 1960 are so vague that they fail to provide him with notice of what conduct is criminal and what conduct is not.

The statute seeks to impose a criminal penalty on those who transfer "property" in the form of Bitcoin. The phrase "whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an **unlicensed money transmitting business**, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." covers money not property and since the IRS has designated Bitcoin as property, it makes sense that the statute fails to draw a clear line between criminal and non-criminal conduct. In addition, § 1960 fails to identify with the requisite specificity what constitutes a culpable state of mind. Finally, § 1960 states that conduct is criminal if

a person transfers money not property as the IRS has stated. According to § 1960, "the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier". This phrase is also unconstitutionally vague. For these reasons, the statute is unconstitutional as applied, and the Court should dismiss the indictment.

## INDICTMENT

The Indictment states in Count I that Defendants, between March 2014 and June 2015, in the Eastern District of Michigan, District of Maine, did knowingly conduct, control, manage, supervise, direct and own all and part of a money transmitting business affecting interstate commerce, which failed to comply with the money transmitting business registration requirement set forth in Title 31, United States Code, section 5330, and the regulations prescribed thereunder, including Title 31, Code of Federal Regulations, Section 1010.100 (ff)(5). In violation of Title 18, United States Code, Sections 1960 and 2. There are civil forfeiture provisions as well.

## FACTS ACCORDING TO THE GOVERNMENT

HSI Portland, ME has initiated this case to investigate individuals operating unlicensed money service businesses (MSBs) using Bitcoin and/or operating on or through "darknet" websites. HSI Portland will specifically target individuals seeking face-to-face transactions involving bulk U.S. currency in exchange for digital Bitcoin transfers. Such individuals are being targeted due to a potential ability or willingness to facilitate unlicensed U.S. currency to Bitcoin conversions for people who desire the

greatest anonymity and who are potentially attempting to avoid BSA reporting requirements and/or hide the source or destination of their financial activity.

On May 6, 2015, SA David Fife appeared before Magistrate Judge John Rich III of the United States District Court for the District of Maine in Portland, ME, and swore to a search warrant affidavit for the email account 'salmans@yahoo.com.' The search warrant was issued the same date, and SA Fife submitted it to Yahoo! via email on May, 8 2015.

On June 15, 2015, SA Fife received a response via FedEx from Yahoo! containing a CD-Rom and a letter explaining the results. In the letter, Yahoo! described that they had decided to provide one year of emails instead of the entirety of the account, and provided the phone number of a paralegal at the company should SA Fife have any questions. Shortly after receiving this letter, SA Fife and the AUSA assigned to this case called the paralegal, and asked that the Yahoo! provide more than just one year of emails in its response, since a time frame was not specified in the search warrant. As a result, Yahoo! provided three years of emails from the account, and sent this result on June 23, 2015, in the form of a new CD-Rom.

Between late June and late August, 2015, SA Fife reviewed the contents of the email account as provided by Yahoo!. The account consisted of approximately 6,486 emails, many of which appeared to be in Arabic and a large number of which also appeared to be spam. Many of the remaining emails appeared to deal with MANSY's online streaming television business TVTOYZ.COM, while a significant portion also dealt with his online trade in 'peptides' and steroid/HGH-type compounds.

Within the email account, SA Fife encountered approximately **12 automated emails** from 'www.localbitcoins.com' associated with the sale and/or purchase of Bitcoin spread across 2013, 2014, and 2015, with the earliest being from September 28, 2013. Only four such emails were from 2015, and SA Fife found none of the email correspondence between himself and MANSY detailed in previous reports nor any of the automated emails from 'www.localbitcoins.com' to MANSY associated with SA Fife's purchases of Bitcoin from him. Of the 6,486 emails, SA Fife encountered only 52 that mentioned Bitcoin in any way and/or appeared to pertain to MANSY's Bitcoin business. Among these, however, SA Fife encountered the June 24, 2014, email exchange between MANSY and Coinbase referenced in ROI #9 of this case file, during which Coinbase notified MANSY that it was not going to do business with him anymore due to his apparent operation of an unlicensed money service business. SA Fife further encountered an email exchanged dated December 10, 2014, between MANSY and 'www.localbitcoins.com,' in which the latter informed MANSY that his account was being placed on a "forced holiday" due to "irregularities" found within it. On the same date, MANSY responded, "What's going on is that how you treat good sellers? I still <sic> over $100,000 every month with no problem why are you stopping my account." No further communicated from 'www.localbitcoins.com' regarding this issue was encountered within the account; however, as detailed in ROI #6 of this case file, by December 22, 2014, MANSY's account was active again and he was able to successfully sell Bitcoin.

## **HISTORY OF §1960**

The U.S. Department of Justice has recently engaged in a number of high-profile investigations and prosecutions of Bitcoin and digital currency-related companies and entrepreneurs.

Two prominent and headline-grabbing examples: In 2014, the DOJ prosecution of Bitcoin pioneer Charlie Shrem, resulting in a guilty plea and sentence of two years imprisonment. And more recently the DOJ, in coordination with the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN), entered into a settlement agreement with Ripple Labs Inc. to resolve a criminal investigation. That settlement resulted in $700,000 in civil money penalties and the company having to undertake extensive remedial measures.

What many of these law enforcement actions have in common, including the two just mentioned, is a single federal criminal statute on which they rely, in whole or in part. That statute is 18 U.S.C. § 1960, which makes it a federal crime to operate an unlicensed money transmitting business. Of all the criminal charges federal prosecutors can investigate and bring, few are as easy to prosecute and as hard to defend against as a 1960 charge.

To understand why this is so, you need to understand what 1960 says today, how it has changed over time, what changed as a result of the Patriot Act in 2001, and how it is commonly interpreted.

## **18 U.S.C. § 1960 TODAY**

As it stands today, 1960 provides, in pertinent part:

Whoever *knowingly* conducts, controls, manages, supervises, directs, or owns all or part of *an unlicensed money transmitting business*, shall be fined in accordance with this title or imprisoned not more than 5 years, or both. (Emphasis added.)

1960 then goes on to list three categories of unlicensed money transmitting businesses, which are, in a summarized fashion:

1. Those operating in a state that requires that business to be licensed and makes it a misdemeanor or felony not to do so.

2. Those that fail to comply with Treasury Department regulations covering such a business (*e.g.*, registering with FinCEN).

3. Those that transmit money known to the transmitter to come from or intended to finance criminal activity.

Importantly, in the first two categories (state licensing and Treasury Department compliance), 1960 on its face does not require the DOJ to prove that the defendant knew that he, she, or it needed a specific state license or had to comply with Treasury regulations.

A 1960 charge is a serious offense. It is a felony and punishable by imprisonment of up to 5 years and/or a hefty fine. Also the property connected to a violation can be seized and subjected to civil and criminal forfeiture.

## **18 U.S.C. § 1960 BEFORE 2001**

Before 2001, 1960 was significantly different, and it was much more difficult to prosecute. The Patriot Act amended the statute to eliminate the "loophole" requiring a defendant to know that he, she, or it was operating illegally. Pre-2001, the relevant opening portion of 1960 read:

Whoever conducts, controls, manages, supervises, directs, or owns all or part of a business *knowing the business is an illegal money transmitting business*, shall be fined in accordance with this title or imprisoned not more than 5 years, or both. (Emphasis added.)

In addition, the first category of unlicensed money transmitting businesses before 2001 read:

[Those] *intentionally* operated without an appropriate money transmitting license in a [s]tate where such operation is punishable as a misdemeanor or a felony. . . (Emphasis added.)

The second category (Treasury Department compliance) was unchanged with the Patriot Act, and the last category, which focused on money laundering concerns (as noted above), was a new addition.

The Patriot Act's removal of "knowing the business is an illegal money transmitting business" in the first part of 1960 and "intentionally" in the first category of unlicensed money transmitting businesses has had major repercussions.

## HOW 18 U.S.C. § 1960 HAS BEEN INTERPRETED

According to the DOJ and the few courts that have confronted the issue (with reported decisions), 1960 is now a *general intent crime*, meaning there is no criminal intent required to be guilty of committing it. A defendant only has to commit the specific prohibited act to be found guilty (*e.g.*, a defendant only has to be operating a money transmittal business in State X without the required state license).

The changes to 1960 as a result of the Patriot Act are important for the emerging Bitcoin and digital currency industries, which are under intense law enforcement scrutiny. This is because only three states (SC, NM, MT) do not have money transmission licensing regimes. For the 52 other states and territories, that do, the requirements can be confusing and complex. Knowing if you need a state license is not always so clear, especially with certain innovative business models. And the Treasury Department has numerous requirements that are burdensome and complicated to implement properly, even if registering with FinCEN is itself relatively easy and straightforward.

It should also be emphasized that an individual or group of individuals can be charged with a 1960 offense. 1960 is not limited to entities that are incorporated or otherwise have some formal legal status.

Overall, as it stands today, the DOJ's view on 1960 is that it does not matter if a defendant knew he, she, or it had to comply with the law's provisions, as long as the DOJ can prove that that defendant did not comply, that defendant can be charged with and found guilty of a 1960 violation. This view obviously provides the DOJ with tremendous discretion in bringing a 1960 charge and with a relatively low hurdle for securing a conviction. Thus, if an individual or business accidentally failed to get a state license or violated a minor Treasury Department rule, for example, they could face a felony prosecution.

All that said, attorneys defending a client charged with a 1960 violation have argued that despite the Patriot Act changes to 1960, there remains a criminal intent requirement, and some judges have agreed to a certain limited extent. For example, in *U.S. v. Talebnejad*, a father, mother, and their son were charged with violating 1960 because they operated two money transmitting businesses in Maryland without the necessary state license, where it is a crime do so "knowingly and willfully." The district court held that the federal prosecutor needed to prove that the family acted "knowingly and willfully" as the state law requires. The prosecutor appealed, and the Fourth Circuit reversed, finding that the Patriot Act amendments removed any intent requirement. A dissenting appellate judge held that the Patriot Act only removed 1960's previous intent requirement if the underlying conduct was tied to a federal offense (category two: Treasury Department compliance), not if the charge was predicated on a failure to abide by state regulatory requirements (category one).

Defendant Mansy now argue that otherwise innocuous behavior may be criminalized and punished without a showing of moral culpability because § 1960 and § 5330 now regulate previously unregulated businesses and purport to punish violators regardless of whether business owners knew of their obligation to register with authorities.

There is no guidance on Bitcoin cases, however, in the case out of Maryland we might see some additional guidance.

## UNITED STATES V. TALEBNEJAD

Federal authorities charged Farhad, Fatameh, and Abodlrahman Talebnejad with operating an IVTS that allegedly sent $18 million to unidentified individuals in Iran.

Farhad Talebnejad investigated whether his business needed a Maryland license. After consulting with a Maryland official, Farhad concluded he did not need one because the Talebnejad's business, the Shirazi Money Exchange, did not "sell[] drafts or physically transmit[] money." Nevertheless, because the Shirazi Money Exchange sent money abroad through the United Arab Emirates without registering with Marylandor federal authorities, the Talebnejads were indicted on two counts of violating § 1960.

The U.S. District Court for Maryland dismissed the indictment, concluding that § 1960(b)(1)(A) violated the Talebnejads' due process rights.

First, it reasoned that because § 1960(b)(1)(A) incorporated Maryland state law, which required knowing and willful mens rea, Maryland state law controlled. Congress'

attempt to "extinguish the mens rea requirement" was "inoperative in states such as Maryland" that had prescribed a higher showing for violation of licensing statutes.

The court held that under Maryland law the government had to allege and prove the Talebnejads' duty to acquire a state license. Any other reading could expose not only owners to criminal liability, but also "any number of individuals affiliated with an unlicensed money transmitting business."

Second, the court found that § 1960(b)(1)(B) violated the Talebnejads' due process rights. The statute contained an intentional mens rea requirement, thus it had to be shown that the "[d]efendant knew he was required to register his money transmission business with the U.S. Treasury and that he intentionally failed to do so."

The court reasoned that Congress created a strict liability offense in § 1960(b)(1)(B) because it did not expressly prescribe a mens rea element, unlike § 1960(b)(1)(A).

Subsection 1960(b)(1)(B) offended due process requirements because it lacked mens rea, it did not involve public welfare or morality, and it was punishable with five years imprisonment and possible forfeiture of millions of dollars.

The Fourth Circuit Court of Appeals reversed, upholding § 1960(b)(1)(B) as a valid general intent crime. Section 1960(b)'s mens rea term is found in § 1960(a): "[W]hoever 'knowingly conducts . . . an unlicensed money trans-

mitting business.'"

Subsection 1960(b)(1)(B) defines an "unlicensed money transmitting business." Therefore, the government had only to allege and prove mens rea as to the crime's factual

elements contained in § 1960(a), i.e. "that [the Talebnejads] were conducting a money transmitting business that affected interstate commerce and that [it] was unregistered."

The Fourth Circuit held that the lower court erred by incorporating the Maryland mens rea into § 1960(b)(1)(A). Rather, the statute's legislative history revealed that Maryland law was relevant only insofar as it made violating the licensing statute punishable under federal law.

Therefore, the question was whether "Congress exceeded constitutional bounds when it declared that ignorance of state licensing requirements is not a defense to liability under the federal statute."

The court found that Congress had not—due process requires that Congress specify a mens rea element as to the factual circumstances of a crime but not legal elements, which, in the court'sopinion, it had. Although he found §1960(b)(1)(A) and (B) facially valid, Judge Gregory dissented in part to "express [his] concern that these provisions could raise substantial due process questions in some circumstances."

First, because § 1960(b)(1)(A) incorporates state law, the government must allege and prove all of the legal elements under Maryland law, in addition to those in the federal statute.

It follows then that even though § 1960(b)(1)(A) does not provide its own mens rea term, a successful prosecution would nevertheless require proof of the incorporated state law's mens rea elements.

Second, Judge Gregory explained that § 1960(b)(1)(A) and (B), while facially valid, "might not provide constitutionally sufficient notice of possible regulation," giving rise to due process violations under particular factual circumstances.

In such cases and especially in this Bitcoin case, an "as-applied" challenge to § 1960(b)(1)(A)-(B) should be considered as a due process challenge on the fundamental fairness of this vague and misleading use of §1960 to Bitcoin cases wherein there is no real guidance for the courts .

The Due Process Clause of the Fifth Amendment requires that any law that imposes criminal liability must give potential defendants fair warning of what conduct is proscribed. Criminal liability cannot be imposed without "'fair warning . . . in language that the common world will understand of what the law intends to do if a certain line is passed. **To make the warning fair, so far as possible the line should be clear**.'" United States v. Lanier, 520 U.S. 259, 265 (1997) (quoting McBoyle v. United States, 283 U.S. 25, 27 (1931)). Due process "bars enforcement" of a statute that uses "'terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" Id. at 266 (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)).

When examining a statute with vague terms, courts may impose a "judicial gloss" to supply the "clarity at the requisite level . . . on an otherwise uncertain statute[.]" Id. This "gloss," however, is limited. First, due process prevents a court from applying a novel construction of a criminal statute in any given case; the statute, standing alone or as previously construed, must make it reasonably clear at the time that the defendant engages in the conduct targeted by the prosecution that the conduct was criminal. Id.; see

also id. at 265 n.5 (describing the principle that conduct may not be treated as criminal unless it has been so defined by a competent authority before the conduct has occurred).

Second, the "gloss" must be just that – minor clarifications and limitations. "Federal crimes are defined by Congress, not the courts[.]" Id. at 267 n.6 (citation omitted). A judicial construction of a statute cannot effectively re-draft the legislation. The "judicial gloss" may only go so far as necessary to give effect to congressional intent. See id. A court "may impose a limiting construction on a statute only if it is readily susceptible to such a construction." Reno v. American Civil Liberties Union, 521 U.S. 844, 884 (1997) (quotation omitted). This gloss cannot add omitted terms or redefine existing ones. A court cannot "rewrite a . . . law to conform it to constitutional requirements." Id. at 884-85 (quotation omitted). Courts having to now interpret § 1960 in the current context of Bitcoin a so-called "virtual currency" will have to rewrite the statute, adding omitted terms, and changing and interpeting others. As discussed below, even with the existing constructions of the statute, § 1960 as it relates to Bitcoin and Defendant Mansy § 1960 fails to give fair notice under the Due Process Clause.

## ARGUMENT

### THE PHRASE "WHOEVER KNOWINGLY CONDUCTS, CONTROLS, MANAGES, SUPERVISES, DIRECTS, OR OWNS ALL OR PART OF AN UNLICENSED MONEY TRANSMITTING BUSINESS, SHALL BE FINED IN ACCORDANCE WITH THIS

## TITLE OR IMPRISONED NOT MORE THAN 5 YEARS, OR BOTH" IS UNCONSTITUTIONALLY VAGUE.

Another way in which § 1960 fails to provide fair notice of what conduct constitutes a crime, and what conduct does not, is in the phrase "Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed **money transmitting business**, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." Under the plain terms of the statute, conduct is criminal if the person operates a money transmitting business. This phrase is also constitutionally flawed.

Initially, the fact that the phrase is written in the disjunctive, covering all circumstances related to "money transfers", creates a sweep of such breadth as to violate the Constitution. It criminalizes conduct that does not into the statute. Bitcoin being a form of property is not money and therefore the statute in it's plain form is does not yet encompass investment opportunities like trading Bitcoin.

No existing judicial gloss saves this phrase. Courts use the phrase when they infer a scienter requirement – reasoning that evil motive, potential bad purpose, and acting with the intent to injure the United States is the mens rea necessary to save the statute from the constitutional graveyard. But the actual statute uses the phrase to describe the type of business without any such "intent" element; no the state of mind. The phrase modifies "is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, **whether or not the defendant knew that the operation was required to be licensed** or that the operation was so punishable." The statute lists the types "money

transfers" it covers, so long as they relate to the "transfer of funds on behalf of the public". Each term and element of § 1960 can only be defined using the other terms and elements related to an unconnected Fin CEN regulation. Therefore, no judicial interpretation of the statute serves to clarify any of the vague terms, because the statute §1960 does not reference virtual currency. Only since, July 21, 2011, when FinCEN published a Final Rule amending definitions and other regulations relating to money services businesses ("MSBs"). Among other things, the MSB Rule amends the definitions of dealers in foreign exchange (formerly referred to as "currency dealers and exchangers") and money transmitters. On July 29, 2011, FinCEN published a Final Rule on Definitions and Other Regulations Relating to Prepaid Access (the "Prepaid Access Rule"). This guidance explains the regulatory treatment under these definitions of persons engaged in virtual currency transactions. However, this MSB rule amendment was never referenced in the statute, even though the statute references others: section 5330 of title 31, United States Code.

Should judicial constructions that delete or add to the statutory phrase modifying the scope of information covered by the Act, use it as a modifier to the culpable intent, obscure an element of the offense and constitute one of the most significant constitutional flaws in the statute? Under the plain terms of the statute, the government must prove that the defendant has reason to believe that he was operating a Money Transmitting Business, but the statute fails to provide any guidance on what that looks like as it relates to "virtual currency" like Bitcoin. Moreover, no judicial construction of the statute identifies or deals with this conflict.

There are no guideposts here, only that the defendant has reason to believe that

Bitcoin is in fact money or currency. This statutory requirement, however, is far too abstract a standard to satisfy the requirements of the statute as read plainly. There is nothing "narrow, objective, or definite" about the phrase or the limits on the type of business that would bring Bitcoin within the realm of criminal conduct.

18 USC § 1960, fails with specific clarity to provide a defendant with fair notice of what constitutes criminal conduct related to virtual currency. The phrase is too abstract. Moreover, it contemplates punishing conduct even when no identifiable government interest is harmed. No judicial construction limits the phrase; the only constructions of the phrase employ it as a means of creating an additional scienter requirement, rendering any further use, of the phrases cited above, circular. Using the phrases in this way simply highlights the significant constitutional problems with the statute. The phrase leaves only conjecture and surmise about what the government must prove in order to secure a conviction. That conjecture and surmise is insufficient to give fair notice under the Due Process Clause.

## CONCLUSION

Section 1960 is a statute of alarming breadth and little definition. Because the statute is vague, this Court should dismiss the indictment.

**Respectfully Submitted**,

**FARRIS FRANK HADDAD**
**ATTORNEY AT LAW**
**s/ Farris Haddad**
**26100 American Drive Ste 605**
**Southfield, MI 48034-6185**

**(888) 818-0812**
E-Mail: Farris@callfarris.com

**SHAWN PATRICK SMITH  ATTORNEY AT LAW**
<u>s/ Shawn Patrick Smith</u>
**Attorney for Defendant**
**261 East Maple Rd**
**Birmingham MI 48009**
**(248) 808-3166**
E-Mail:<u>shawn@shawnthelaw.com</u>  P 51431

<u>/s/ Luke Rioux</u>
**Luke Rioux (9915)**
**Attorney for Defendant**
**97A Exchange St #404**
**Portland ME 04101**
**207-358-4909**
**luke@rdcplawyers.com**


Dated: MAY 17,  2016


## CERTIFICATE OF SERVICE

I, hereby certify that I have caused this motion to be electronically filed with the CM/ECF system which will send electronic notice of this filing to:

Assistant United States Attorney Michael Conley

**FARRIS FRANK HADDAD**
**ATTORNEY AT LAW**
<u>s/ Farris Haddad</u>
**26100 American Drive Ste 605**
**Southfield, MI 48034-6185**
**(888) 818-0812**
E-Mail: Farris@callfarris.com

**SHAWN PATRICK SMITH  ATTORNEY AT LAW**
<u>s/ Shawn Patrick Smith</u>
**Attorney for Defendant**

**261 East Maple Rd**
**Birmingham MI 48009**
**(248) 808-3166**
**E-Mail: shawn@shawnthelaw.com  P 51431**

**/s/ Luke Rioux**
**Luke Rioux (9915)**
**Attorney for Defendant**
**97A Exchange St #404**
**Portland ME 04101**
**207-358-4909**
**luke@rdcplawyers.com**