UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>) | |
| v.              ) | Crim. No. 15-cr-198-GZS |
| ) | |
| SAL MANSY   ) | |
| TV TOYZ    ) | |

**GOVERNMENT'S OBJECTION TO DEFENSE
MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF YAHOO.COM
EMAIL ACCOUNT AND INCORPORATED MEMORANDUM**

NOW COMES the United States of America, by and through its attorneys Thomas E. Delahanty II, United States Attorney for the District of Maine, and Michael J. Conley, Assistant United States Attorney, and respectfully objects to defendants' Motion to Suppress (Docket Item # 34). The defendants have been charged with one count of operation of an unlicensed money service business, and aiding and abetting such conduct, in violation of 18 U.S.C. §§ 1960 and 2. The defendants have moved to suppress the contents of a Yahoo! email account alleging that (1) the search warrant upon which the search was based was overbroad and lacked particularity; and (2) the procedure employed to conduct the search (agents conducting the search of the email account as opposed to Yahoo! employees) was improper.[1]  For the reasons stated below, the Government respectfully requests that the defendants' motion be denied without a hearing.

**FACTUAL BACKGROUND**

On May 6, 2015, Department of Homeland Security Special Agent David Fife sought and

---

[1] Defendants also argued that the affidavit submitted in support of the requested search warrant lacked probable cause.  On June 16, 2016, defense counsel provided written notice to the government that they do not intend to seek suppression of the warrant on the basis that probable cause was lacking.  Accordingly, the government has not addressed the issue of probable cause in this filing.

1

obtained a federal search warrant (Mag. No. 2:15-mj-91-JHR) to review the Yahoo! email account salmansy@yahoo.com. Prior to submitting his application and affidavit with the court, SA Fife reviewed the contents of the application with an Assistant U.S. Attorney. In his affidavit filed in support of the requested warrant, SA Fife expressed his belief that probable cause existed to support the requested search. This belief was predicated upon, among other things, the following: (1) his undercover purchases of Bitcoin from the defendant; (2) his electronic communications with the defendant; and (3) the defendant's electronic communications with 'Coinbase' regarding the defendant's requirement to register with the Department of Treasury's Financial Crimes Enforcement Network (FinCEN) as a money service business.

On May 6, 2015, U.S. Magistrate Judge John H. Rich III expressed his concurrence that probable cause existed by issuing a search warrant authorizing the search of the Yahoo! email account salmansy@yahoo.com. There were two attachments to the warrant: Attachment A and Attachment B. These attachments consisted of the following:

> **ATTACHMENT A**
> **Property to Be Searched**
> This warrant applies to information associated with salmansy@yahoo.com that is stored at premises controlled by Yahoo!, a company that accepts service of legal process at Sunnyvale, California.
>
> **ATTACHMENT B**
> **Particular Things to be Seized**
> I.   Information to be disclosed by Yahoo! (the "Provider")
>      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any e-mails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for the account or identifier listed in Attachment A:
> a.   The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source

and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;
b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);
c.     The types of service utilized;
d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;
e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.
II.     Information to be seized
       All information described above in Section I that constitutes fruits, evidence or instrumentalities of violations of 18 U.S.C. § 1960 involving salmansy@yahoo.com, including the following:
a.     Information pertaining to the operation, ownership, and control of an unlicensed money service business, as defined in 18 U.S.C. § 1960.
b.     Information relating to the identities and locations of any persons who created or used the account; or who communicated with the account, if the communications pertained to the operation of an unlicensed money service business, as defined in 18 U.S.C. § 1960.

Mag. No. 2:15-mj-91-JHR.

**DISCUSSION**

A.     <u>Fourth Amendment</u>

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; see also Fed. R. Crim. P. 41. According to the Supreme Court, a search warrant complies with the Fourth Amendment when it includes three elements: it must be issued by a neutral magistrate; it must be based on a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or

3

conviction' for a particular offense"; and it must satisfy the particularity requirement. Dalia v. United States, 441 U.S. 238, 255 (1979). The scope of the particularity clause is limited to "two matters . . . the place to be searched and the persons or things to be seized." United States v. Grubbs, 547 U.S. 90, 97 (2006) (internal quotation marks omitted). In particular, "[n]othing in the language of the Constitution or in this Court's decisions interpreting that language suggests that . . . search warrants also must include a specification of the precise manner in which they are to be executed." Id. at 98 (quoting Dalia, 441 U.S. at 255).

"The manifest purpose of [the] particularity requirement [is] to prevent general searches." Maryland v. Garrison, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987). "Particularity prohibits the government from conducting general, exploratory rummaging of a person's belongings." United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quotations omitted). "The fact that [a]warrant call[s] for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity." United States v. Sugar, 606 F. Supp. 1134, 1151 (S.D.N.Y. 1985). "The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." United States v. Cook, 657 F.2d 730, 733 (5th Cir. 1981) (citations omitted). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007). "The particularity requirement is one of practical accuracy rather than of hypertechnicality." Sigillito, 759 F.3d at 923.

    B.    <u>The Search Warrant was not Overbroad</u>

The search warrant at issue here identifies with particularity the place to be searched and the items to be seized. As noted above, Attachment A describes a single email account, the

specific company that is in possession of the information contained within the email account, and where that company is located. Attachment B identifies with unyielding specificity precisely which items are to be seized from the email account. For example, since the supporting affidavit readily establishes that this particular email account has been used to facilitate criminal activity, determining both who created the account and who uses the account is critical to furthering the investigation. With this in mind, Attachment B outlines an intent to seize, among other things, the following:

- The contents of all e-mails associated with the account . . . the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

- all records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers;

- the date on which the account was created;

- the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

- all records or other information stored . . . by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

- all records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

- records or other information regarding the identification of the account.

All of this information sought to be obtained is directly relevant to identifying the user of the account in question and can hardly be described in any reasonable way as lacking in specificity.

In addition to identifying the user of the account, agents also sought evidence of the crime itself. Specifically, agents sought (1) "information pertaining to the operation, ownership,

5

and control of an unlicensed money service business;" and (2) "communications [pertaining] to the operation of an unlicensed money service business."   While it may be arguable that the phrase 'unlicensed money service business' does not rival a laser beam in terms of precision, such a level of precision is not necessitated by the Fourth Amendment – particularly in a case of this nature.   <u>Spinelli v. United States</u>, 382 F.2d 871, 886 (8th Cir. 1967) ("When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking."), rev'd on other grounds, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Bottom line - a law enforcement agent conducting a search under this warrant would know exactly where to look and exactly what to look for.

      C.    <u>The Two-Step Procedure for Executing the Warrant is Reasonable</u>

In addition to attacking the warrant itself, defendants take issue with the procedures employed to facilitate execution of the warrant because the United States seized emails in the account that fall outside the scope of the warrant.   Specifically, defendants argue that:

> A search of an entire email account that may have been active for years will cover many thousands of documents, images, other materials and perhaps the most personal details of an individual's life.   Under these circumstances, the particularity requirement is heightened and we must demand that the government be even more specific and focused in its search.
>
> Oddly specificity is probably easier in the electronic context since the service provider could easily filter digital information. A more limited quantity of information might easily be provided to the government based on specific search terms or date limiters or addresses and domain names related to the investigation. None of that happened here.

See Defense Motion to Suppress at 3.

As an initial matter, under Supreme Court precedent, it is reasonable for officers

executing a warrant to examine emails that fall within the scope of Attachment A to determine which ones fall within the scope of Attachment B. In general, when officers execute a warrant, "[a] container that may conceal the object of a search authorized by a warrant may be opened immediately; the individual's interest in privacy must give way to the magistrate's official determination of probable cause." United States v. Ross, 456 U.S. 798, 823 (1982). See also LaFave, Search and Seizure, § 4.10(a), at 932 (5th ed. 2012) ("A search made under authority of a search warrant may extend to the entire area covered by the warrant's description.").

Officers cannot determine whether a document falls within the scope of the warrant without reviewing it; thus, they must examine it to determine whether it falls within the scope of the warrant. The Supreme Court recognized and approved this process in Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976), where it stated that "[i]n searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." Similarly, the D.C. Circuit has approved a "brief perusal" of each document to determine whether it falls within the scope of the warrant; it directed that "the perusal must cease at the point at which the warrant's inapplicability to each document is clear." United States v. Heldt, 668 F.2d 1238, 1267 (D.C. Cir. 1982). Here, the United States executed a warrant in the manner authorized by Andresen and Heldt: it examined emails within the scope of Attachment A to determine whether they constitute evidence or instrumentalities within the scope of Attachment B.

The United States did not adopt novel or unprecedented procedures here. To the contrary, this two-step approach to warrants for electronic evidence was explicitly adopted by the 2009 amendments to Federal Rule of Criminal Procedure 41. See Fed. R. Crim. P. 41, Advisory

7

Committee's Notes (2009 amend.). These amendments were promulgated by the Supreme Court. See 28 U.S.C. § 2072. Rule 41 now provides that a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."  Fed. R. Crim. P. 41(e)(2)(B)

Fed. R. Crim. P. 41, Advisory Committee's Notes (2009 amend.) recognize that electronic storage media "commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location." Id. The Notes "acknowledge[] the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."  Id.   Thus, in promulgating the Rule, the Supreme Court recognized that the two-step procedure would be used routinely for searches of electronic evidence.

In addition, courts have widely approved the two-step procedure for executing warrants for electronic evidence, both before and after the 2009 amendment to Rule 41. As the Sixth Circuit explained, "[t]he federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a 'sufficient chance of finding some needles in the computer haystack.'" United States v. Evers, 669 F.3d 645, 652 (6th Cir. 2012). Every court of

appeals to consider the issue has endorsed the two-step process for warrants for electronic evidence. See, e.g., United States v. Stabile, 633 F.3d 219, 233-34 (3d Cir. 2011) (rejecting argument that computers should have been searched on-site and stating that "practical realities of computer investigations preclude on-site searches"); United States v. Grimmett, 439 F.3d 1263, 1268–70 (10th Cir. 2006) (holding that a warrant for the search of "any and all" computer hardware and software for child pornography authorized both the seizure and subsequent search of the defendant's computer files); Guest v. Leis, 255 F.3d 325, 335 (6th Cir. 2001) ("Because of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers, including their content, was reasonable in these cases to allow police to locate the offending files."); United States v. Hay, 231 F.3d 630, 637-38 (9th Cir. 2000) (holding that officers were justified in removing computers for off-site search "because of the time, expertise, and controlled environment required for a proper analysis"); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images [of the child pornography sought]."). [2]

Similarly, the Eighth Circuit upheld as reasonable the execution of a two-step warrant under 18 U.S.C. § 2703 for email stored with a web-based email provider in United States v. Bach, 310 F.3d 1063, 1067-68 (8th Cir. 2002). In Bach, an investigator "obtained a state search warrant to retrieve from Yahoo! e-mails between the defendant and possible victims of criminal

---

[2] Appellate courts have also approved off-site sorting in cases involving paper documents, rather than electronic evidence. See, e.g., United States v. Santarelli, 778 F.2d 609, 616 (11th Cir. 1985) (upholding off-site examination of documents from defendant's desk and four-drawer filing cabinet); United States v Hargus, 128 F.3d 1358, 1363 (10th Cir. 1997) (upholding seizure of an entire file cabinet because seizure was motivated by the impracticability of on-site sorting).

sexual conduct, as well as the Internet Protocol addresses connected to his account." Id. at 1065.

However, Yahoo! employees did not attempt to find this particular information:

> Yahoo! technicians retrieved all of the information from Bach's account at dlbch15@yahoo.com and AM's Yahoo! e-mail account. According to Yahoo!, when executing warrants, technicians do not selectively choose or review the contents of the named account. The information retrieved from Bach and AM's accounts was either loaded onto a zip disc or printed and sent to [a law enforcement officer]. E-mails recovered from Bach's account detail him exchanging pictures with other boys and meeting with them.

Id. The court upheld this search as reasonable under the Fourth Amendment. Id. at 1067-68.

The two-step procedure for email warrants has also been upheld by district courts – including this one. United States v. Taylor, 764 F. Supp.2d 230, 237 (D. Me. 2011); United States v. Bowen, 689 F. Supp.2d 675, 682 (S.D.N.Y. 2010). The defense suggestion that Yahoo! should be required to conduct the search for law enforcement is unprecedented, contrary to Fourth Amendment principles and should be rejected.  As noted further below, such a procedure is also unworkable, impractical and unreasonable.

      D.     Requiring Yahoo! to Execute the Warrant is Unreasonable

Defendants' proposed manner of warrant execution, under which employees of a private company must review information in an email account to determine the information that falls within the scope of the warrant, is unreasonable. As an initial matter, defendants cite no authority for imposing this requirement, and there is none. As this very court has noted, "The Fourth Amendment does not require the government to delegate a prescreening function to the internet service provider or to ascertain which e-mails are relevant before copies are obtained from the internet service provider for subsequent searching." United States v. Taylor, 764 F. Supp.2d 230, 237 (D. Me. 2011). See also United States v. Bowen, 689 F. Supp.2d 675, 682 (S.D.N.Y.

2010) (similar). In the context of a physical warrant, it would be improper for a magistrate judge to require a landlord, rather than government agents, to execute a warrant to search an apartment for documents. Defendants' suggestion that Yahoo! should execute a warrant for email stored on its servers is similarly erroneous.

As a practical matter, defendants' approach is unworkable. Executing a search warrant is not a ministerial procedure that can be delegated to untrained, non-governmental personnel. To effectively execute a warrant, a person must be equipped to separate responsive from non-responsive information. To properly interpret the significance of a document that may relate to a criminal offense, executing agents benefit from detailed knowledge about the particular crime under investigation, its participants, and their practices. Messages that might appear innocuous to someone without knowledge of the case could actually be crucial evidence (whether inculpatory or exculpatory) of the crimes at issue. In addition, sharing information about the crime under investigation with a private party inappropriately risks the security and integrity of the investigation. Agents executing email warrants frequently must know grand jury information and information concerning the identity of confidential informants. The United States cannot hire, supervise, or fire service provider employees; thus, the government should not be forced to trust them with the sensitive facts of criminal investigations.

Second, even if this information could be disclosed to employees of service providers, it would be unreasonably burdensome for the United States to have to educate provider personnel about the details of an investigation each time it seeks to execute an email warrant. The process would be time-consuming, expensive, and would unreasonably delay the execution of warrants. Furthermore, even with some instruction, service provider employees would still be unlikely to

know the case as well as government investigators, so some responsive information would likely not be recognized. In short, requiring service provider employees to execute email warrants "would be less effective than allowing government agents to determine the relevance of particular emails." United States v. Deppish,__F. Supp.2d__, 2014 WL 349735, at *6 (D. Kan. Jan. 31, 2014).

Third, even if service provider employees could be educated about the facts of an investigation, they would still likely be less skilled in executing a warrant than trained federal agents. Agents with experience and knowledge of the criminal offenses under investigation are more likely than service provider employees to know whether information constitutes evidence of crime. And agents are more likely than service provider employees to care whether they succeed in finding relevant evidence. Defendants' suggested requirement would force the government, in executing warrants, to rely on service provider employees with uncertain levels of experience, interest, capability, understanding, diligence, integrity, and bias. That requirement has no basis in the Fourth Amendment and should be rejected.

Fourth, speed is often critical to the execution of a warrant, and the defendants' procedure would likely slow execution of email warrants to a snail's pace. Currently, even without the additional burden that defendants' suggestion would impose, many email providers struggle to complete within two weeks the ministerial task of producing the contents of a specified email account. Requiring providers to perform the more difficult task of searching for the particular items to be seized under a warrant would likely overwhelm them and lead to significant delays in warrant execution. In drafting the provision of 18 U.S.C. § 2703 for extra- district jurisdiction to issue email warrants, Congress emphasized the need for speed in executing such warrants:

12

> An investigator, for example, located in Boston who is investigating a suspected terrorist in that city, might have to seek a suspect's electronic e-mail from an Internet service provider (ISP) account located in California. The investigator would then need to coordinate with agents, prosecutors and judges in the district in California where the ISP is located to obtain a warrant to search. These time delays could be devastating to an investigation, especially where additional criminal or terrorist acts are planned.

H.R. Rep. 107-326(I), 107th Cong., 1st Sess., at 57 (2001). Congress's goal of timely warrant execution thus would be undermined by the defendants' requirement that service providers execute email warrants.

Fifth, requiring service provider employees to execute email warrants will not protect account owners. To find responsive information, someone is going to have to see what is stored in the specified email account. There is no reason to suspect that service provider employees are more likely than government agents to safeguard from improper disclosure information learned during execution of a warrant. In fact, the opposite is true: service provider employees are not sworn to uphold the Constitution, trained in their duties and responsibilities in executing warrants, or likely to be held accountable if execution is performed unreasonably. In addition, if Yahoo! employees were to review the email within attachment A to determine whether it falls within Attachment B, they would be acting as government agents for Fourth Amendment purposes, because they will be acting at the direction of law enforcement. See e.g., Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971) (stating that a civilian is a state actor for Fourth Amendment purposes when she "act[s] as an 'instrument' or agent of the state"); United States v. Sparks, 265 F.3d 825, 830 (9th Cir. 2001) (stating that it was undisputed that a civilian acted "as an agent of the state" when he assisted law enforcement with a search), overruled on other grounds, United States v. Grisel, 488 F.3d 844 (9th Cir. 2007) (en banc). Thus, even under

defendants' approach, persons acting as agents of the government will review all the email within Attachment A. Rather than protecting against the issuance of a general warrant, defendants' approach merely ensures that the agents executing the warrant are civilians rather than professional investigators.

Sixth, although it might be possible for providers to develop the capacity to perform keyword searches on behalf of the government, keyword searches are an inadequate substitute for a message-by-message review during execution of the warrant. Keyword searches may hit on some responsive documents, but they miss large quantities of relevant evidence. Criminals may (intentionally or unintentionally) use different terminology than the keywords. They may misspell words.   They may communicate through images or attachments not readily susceptible to keyword searches. Other incriminating email messages may be comprised entirely of words that on their own are clearly innocuous, such as "I did that thing you asked."

For these reasons, federal courts have rejected arguments that searches of electronic evidence may be limited to keyword searches. See, e.g., United States v. Crespo-Rios, 645 F.3d 37, 43-44 (1st Cir. 2011) (holding that "government agents cannot simply search certain folders or types of files for keywords" because they could miss relevant evidence); United States v. Adjani, 452 F.3d 1140 (9th Cir. 2006) (holding that restricting computer search to specific search terms "would likely have failed to cast a sufficiently wide net to capture the evidence sought"); United States v. Vilar, 2007 WL 1075041, at *38 (S.D.N.Y. Apr. 4, 2007) ("[I]t seems manifestly obvious that any requirement that a computer search be confined by a key-word search protocol would inevitably immunize criminals."); United States v. Graziano, 558 F. Supp. 2d 304, 315 (E.D.N.Y. 2008) ("[R]estrict[ing] the computer search in every case to certain

14

methodologies or terms would give criminals the ability to evade law enforcement scrutiny simply by utilizing coded terms in their files or documents."). Under Andresen and Heldt, the government is entitled to make a brief perusal of each email to determine whether it falls within the scope of the warrant; it is not required to limit itself to a process that is an inadequate substitute.

Finally, to insist that the service provider, rather than law enforcement agents, execute the warrant, is to essentially require the government to rely on subpoena-like process to obtain evidence from a third-party email service provider. The Supreme Court rejected such a requirement in Zurcher v. Stanford Daily, 436 U.S. 547, 560-63 (1978). In that case, the district court had held that a subpoena rather than a warrant must be used to obtain information from a third-party not suspected of a crime. The Supreme Court disagreed, stating that "we are unpersuaded that the District Court's new rule denying search warrants against third parties and insisting on subpoenas would substantially further privacy interests without seriously undermining law enforcement efforts." Id. at 560.

E.     Good Faith Reliance

Assuming, arguendo, that the search warrant in this case was deemed to be overbroad, the agents nevertheless acted in good faith in seizing the evidence pursuant to the warrant. In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." Id. at 919. That is particularly true, the Court noted, "when an officer acting with objective good faith has obtained a search warrant from a judge or a magistrate and acted within its scope." Id. at 920. The Court reasoned that, in such circumstances, the deterrent value of

the exclusionary rule is vitiated by the fact that an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the search warrant is technically sufficient. Id. at 921.

The Supreme Court applied the same exception in the companion case of Massachusetts v. Sheppard, 468 U.S. 981 (1984) to a search warrant that insufficiently described the items to be seized. In Sheppard, the trial judge suppressed evidence seized during the execution of a search warrant that incorrectly identified the items to be seized as evidence of a narcotics transaction, rather than a murder. Relying on Leon, the Supreme Court reversed, emphasizing that the officers had demonstrated their good faith by submitting an affidavit to a judge and thereafter relying on the judge's determination that the warrant was sufficiently particularized. Sheppard, 468 U.S. at 989-91. See also Illinois v. Krull, 480 U.S. 340, 359-61 (1987) (applying Leon to a state law, later held invalid, that authorized a warrantless search, even though the statute could have been more narrowly drawn).

The same considerations that prompted the Supreme Court to apply the good faith exception in Leon, Sheppard, and Krull are also present here. SA Fife, armed with information obtained during the course of his investigation, drafted an affidavit in support of an application for a search warrant authorizing the search of the Yahoo! email account. Prior to submitting the application, affidavit and draft search warrant to a judicial officer, SA Fife sought the input of an Assistant U.S. Attorney.

As the First Circuit has noted in United States v. Owens, 167 F.3d 739 (1999), there are circumstances, where the existence of good faith will not cure the defect:

> There are four exclusions to the Leon good-faith exception: (1) when the magistrate . . . was misled by information in an affidavit that the affiant knew was

>false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his [detached and neutral] judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient – i.e. in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.

Id. at 745 (quotations and citation omitted). None of these exceptions, however, applies here. Judge Rich reasonably found probable cause to believe the stated items would be found in the Yahoo! e-mail account and issued a warrant that the officers reasonably relied upon and executed properly and within its scope. There is no evidence that the issuing judge abandoned his detached and neutral role. See id. There is no evidence to suggest that any of the officers were dishonest or reckless in applying for, relying upon and executing the warrant. See id. Finally, there is no evidence that any officer attempted to obtain the warrant though deceit or omission. See id. Accordingly, as in United States v. Robinson, 359 F.3d 66, 70 (1st Cir. 2004), and United States Capozzi, 347 F.3d 327, 334 (1st Cir. 2003), the Court should find the good faith exception applies and that suppression of the evidence in this case would do nothing to further the exclusionary rule's objective of deterring police misconduct. See also United States v. Diaz, 841 F.2d 1, 6 (1st Cir. 1988) (applying Leon good faith exception in context of a search conducted in reliance on a warrant later found to be ovebroad).

17

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the defendants' motion to suppress be denied.

Dated at Portland, Maine, this 20th day of June 2016.

                                              Respectfully submitted,

                                              Thomas E. Delahanty II
                                              United States Attorney

                                              /s/Michael J. Conley
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              100 Middle Street, PO Box 9718
                                              Portland, Maine 04101
                                              michael.conley@usdoj.gov

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

      I hereby certify that on June 20, 2016 I electronically filed Government's Objection to Defendant's Motion to Suppress Evidence and Incorporated Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Luke Rioux
    Farris Frank Haddad
    Shawn P. Smith

    Thomas E. Delahanty II
    United States Attorney


    /s/Michael J. Conley
    Assistant United States Attorney
    United States Attorney's Office
    100 Middle Street, PO Box 9718
    Portland, Maine 04101
    (207) 780-3257
    michael.conley@usdoj.gov