UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:15-CR-198-GZS |
| ) | |
| Sal Mansy, ) | |
| TV Toys, LLC ) | |

**DEFENDANTS' MOTION TO DISMISS**

The Defendants, though undersigned counsel, request that this Honorable Court to dismiss Count One of the superseding indictment. This count alleges that Defendants violated 18 U.S.C. § 1960 by unlawfully operating a money service business. The Defendants are arguing that the Government's allegations in Count One, taken at face value, do not amount to a criminal offense. Accordingly, the Court should grant the motion to dismiss pursuant to Rule 12(b)(3)(B)(v), which allows for pretrial motions to dismiss indictments for "failure to state an offense." *See also United States v. Sampson*, 371 U.S. 75, 78–79 (1962). In support of this motion, the Defendants state as follows:

**PROCEDURAL HISTORY/BACKGROUND**

The Indictment states in Count I that Defendants, between March 2014 and June 2015, in the Eastern District of Michigan, District of Maine, did knowingly conduct, control, manage, supervise, direct and own all and part of a money transmitting business affecting interstate commerce, which failed to comply with the money transmitting business registration requirement set forth in Title 31, United States Code, section 5330, and the regulations prescribed thereunder, including Title 31, Code of Federal Regulations, Section 1010.100 (ff)(5),

1

in violation of Title 18, United States Code, Sections 1960 and 2. There are civil forfeiture provisions as well.

The financial instrument at the heart of the alleged unlawful business is not cash, checks, notes, or other aspects of the United States monetary system. The financial instrument in question is the digital virtual currency known as Bitcoin.  The Government has allege that Sal Mansy and TV Toyz, LLC, violated 18 U.S.C. § 1960 by unlawfully operating a money service business because they engaged in numerous transactions involving the buying and selling of bitcoins, without registering as such.  There is no doubt that central to the issue of whether the Defendants ran an unlicensed money transmitting business in violation of Section 1960, is the definition of Bitcoin.  Is Bitcoin currency or money?   If Bitcoin is not defined as money then the Defendants cannot be found in violation of Section 1960.

Since Bitcoin is an entirely new phenomenon courts have had little opportunity to legally define what Bitcoin is, nor determine the implications of such under 18 U.S.C. § 1960, or similar state laws.  When the issue of Bitcoin found its way into the court system, both federal and state courts alike have refused to define Bitcoin as money or currency.

On July 22, 2016, a Florida state court dismissed a three-count information against a sole defendant. See *Florida v. Espinoza*, No. F14-293 (Fla. Cir. Ct. July 22, 2016);  See also *State v. Espinoza*, No. F14-2923, slip op. at 5–6 (Fla. 11th Judicial Cir. Ct. July 22, 2016) (unpublished decision).  Just as in this case, the defendant, Michell Espinoza, was prosecuted by the government because he engaged in numerous bitcoin transactions and did not register  as a money services business ("MSB").  In *Espinoza*, the state court dismissed the case because it determined that Bitcoin was not money.

The state court's rational in *Espinoza* is directly applicable to this case. First, the court held that Espinoza was not a "money transmitter" within the meaning of Florida's MSB (money services business) statute because it found that Espinoza's sale of bitcoin to the undercover agent did not "meet the definition of transmit." *Espinoza*, *supra* note 6. Second, the court held that Espinoza could not be considered a money transmitter because it concluded that the defendant did not charge a fee when he exchanged his bitcoin for cash. *Id.* Third, the court held that the defendant did not qualify as a "payment instrument seller" because it found that bitcoin is not money. *Id.* After the court dismissed the case, Espinoza was freed, and allowed to continue engaging in the sale of bitcoin. *Id.*

Even more recently, a Magistrate in U.S. District Court, Western District of New York dismissed charges against the Defendant, Richard Petix, who was charged with violating Section 1960 because the bought and sold Bitcoin. See *U.S. v. Richard Petix, U.S. District Court, Western District of New York, 15-Cr-227A*; *Report and Recommendation*. The analysis engaged in by Honorable Hugh B. Scott in *Petix* is sound, expansive, and directly applicable in this matter. The Defendant in this case essentially incorporates by reference the decision issued by Magistrate in *Petix* in advancing the arguments in this Motion.

## ARGUMENT

### *Motions to Dismiss Indictment*

Just as in *Petix*, this Court should review this motion under Rule 12(b)(3)(B)(v), which allows for pretrial motions to dismiss indictments for "failure to state an offense." *Petix*, at 5; citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962) ("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."). "[A]n indictment is sufficient if it, first, contains

3

the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.  It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Petix*, at 5; citing, *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (internal quotation marks and citations omitted).

"The language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* citing, *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (internal quotation marks and citations omitted).  "The court is limited, however, in what it may consider during this analysis. Its determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict. Generally speaking, it is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury."  *Petix*, at 5 citing, *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (citation omitted).

### *History of Bitcoin*

In 2008 "Satoshi Nakamoto" created Bitcoin with the goal of allowing online payments to be sent directly from one party to another without the need for a trusted third-party financial institution or intermediary to guard against the problem known as double spending.[1] The objective was to create a virtual currency that would limit transaction costs, guarantee security,

---

[1] Satoshi Nakamoto, *Bitcoin: A Peer-to-Peer Electronic Cash System* (Oct. 31, 2008), http://bitcoin.org/bitcoin.pdf.

4

and protect privacy in electronic payments. *Id*. The resulting creation was an open-sourced, decentralized, peer-to-peer, digital currency ecosystem known as Bitcoin.

When people refer to Bitcoin, they may be referring to one of two things: units of the virtual currency ("bitcoin") or the Bitcoin network as a whole.[2] Bitcoin has no physical form and exists only in the virtual world.[3] Unlike the U.S. dollar, which is based on the faith and credit of the U.S. government, bitcoin is based on mathematics. Whereas the United States Department of the Treasury prints the U.S. dollar, no government or central authority produces bitcoin. Rather, certain members of the Bitcoin network known as "miners" are rewarded with new bitcoin for a process known as "mining." There is no centrally owned computer or set of computers doing the mining (miners and their computers are spread out around the world); Bitcoin is completely decentralized.[4]

"Mining" is "the process of adding [new] Bitcoin transactions to the public ledger of past Bitcoin transactions."[5] When one generally thinks of adding entries to a ledger, one thinks of adding a line item to a spreadsheet or a page to a book. Bitcoin transactions, however, are added to the public ledger in "blocks," with each block containing the record of one or more transactions, a reference to the "block" that came before it, and an answer to an extremely difficult math problem that requires significant computing power to solve.[6] Because each block contains information about the previous block, the ledger is referred to as the "blockchain." When a miner successfully adds a new block to the chain, that miner is rewarded with new bitcoin. The only way new bitcoin is generated is through the mining process.

---

[2] *See Drawing the Distinction between the uppercase B and lowercase b in Bitcoin*, BLOCKCHAIN (December 29, 2014), https://blog.blockchain.com/2014/12/29/drawing-the-distinction-between-the-uppercase-b-and-lowercase-b-in-bitcoin.
[3] Andreas M. Antonopoulos, Mastering Bitcoin 4 (2013)(ebook).
[4] Jason Leibowitz, *Bitcoin: A 21st Century Currency Explained By a Wall Street Veteran*, CoinDesk (February 7, 2016), http://www.coindesk.com/bitcoin-explained-global-currency-wall-street-veteran.
[5] *Mining*, Bitcoin Wiki, https://en.bitcoin.it/wiki/Mining (last visited Dec. 21, 2016).
[6] *Block*, Bitcoin Wiki, https://en.bitcoin.it/wiki/Block (last visited Dec. 21, 2016).

Perhaps the greatest difference between bitcoin and other currencies exchanged over the Internet is that bitcoin transactions are peer-to-peer. In the past, electronic exchange of value transactions required a trusted third-party intermediary, (e.g., a financial institution) to process and authorize the transactions.[7] The third party would, among other things, verify that the payor did not send the same unit of currency to more than one recipient, a problem known as double spending. *Id.* With bitcoin, however, there is no third party verifying the transactions. Instead, the miners are working together to authenticate the transactions. *Id.* Before a new block is submitted to the blockchain, the miner must complete a "proof of work" showing that all the transactions in the block have been verified. *Id*. The new block gets added to the blockchain only after the other miners reach a consensus that the work is accurate and that the payors have not double-spent their bitcoin *Id*.

*Bitcoin and Section 1960*

Count One of the superseding indictment consists of a violation of 18 U.S.C. § 1960. Section 1960 has two subsections, an operational subsection and a definitional subsection. *Petix* at 6. The operational subsection states "Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 1960(a). *Id.* The analysis of the remainder of the statute becomes complicated and open to interpretation. Of all the terms and phrases used in the operational subsection, the definitional subsection partially defines only two of them. *Id.* For purposes of Section 1960,and ignoring language not relevant to this case, "the term 'unlicensed money transmitting business' means a

---

[7] Nakamoto, *supra* note 12. A common problem of transacting with information-based currency is that of "double-spending," where a payor sends a unit of currency to two different payees simultaneously, thereby defrauding one or both of them.

money transmitting business which affects interstate or foreign commerce in any manner or degree and... fails to comply with the money transmitting business registration requirements under section 5330 of title 31,UnitedStates Code, or regulations prescribed under such section." *Id.,* §1960(b)(1)(B).

The definitional subsection also addresses the term "money transmitting," but it does not truly define the term. Whatever "money transmitting" is, the definitional subsection states only that it "*includes* transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."[8] *Id.*§ 1960(b)(2) (emphasis added). Then, Section 1960 declares that, under the right conditions including deficiencies in licensing and registration, certain conduct involving "money" or "funds" is unlawful. *Petix*, at 6. Section 1960 does not define "money", and Section 1960 also does not define' transferring' or 'funds.'" *Petix*, at 6-7.

Defining the terms "money" and "funds" requires using a few principles of statutory interpretation. *Petix*, at 7. "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Petix*, at 7, citing, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997) (internal quotation marks and citations omitted).

---

[8] See, e.g.,*Fed.Land Bank of St. Paulv. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.") (citations omitted);*White v. Nat'l Football League*, 756 F.3d 585, 595 (8th Cir. 2014)("While at times the expression of one thing excludes others not expressed, when a statute uses the word 'includes' rather than 'means' in defining a term, it does not imply that items not listed fall outside the definition.")(internal quotation and editorial marks and citations omitted).

When courts have to examine specific terms in statutes, and the statutes do not provide definitions for those terms, judges will assign an ordinary, common-sense meaning consistent with the broader context of the statute. *Petix*, at 7; citing, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016) (citations omitted). "A 'common and ordinary' meaning may include another statutory definition from a similar context, a dictionary definition, or a common-law definition." 2A Norman Singer and Shambie Singer, *Sutherland Statutory Construction* § 47:7 (7th ed. and 2016 Supp.) (citations omitted); *see also, e.g., Boumediene v. Bush*, 553 U.S. 723, 776 (2008) ("When interpreting a statute, we examine related provisions in other parts of the U.S. Code.") (citations omitted); *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207 (1997) ("In the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning.") (internal quotation marks and citation omitted). Courts have to use caution when relying solely on dictionary definitions of terms that ordinary people in everyday life would understand in a different way. "Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words . . . . Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) (citations omitted). *Petix*, at 8.

Taking the two undefined terms in Section 1960 in reverse order, the Supreme Court already has applied the above principles of interpretation to the term "funds." "The ordinary meaning of 'fund[s]' is 'sum[s] of money . . . set aside for a specific purpose.'" *Clark v. Rameker*, ___ U.S. ___, 134 S. Ct. 2242, 2246 (2014) (ellipsis and brackets in original) (citation omitted). The Supreme Court happened to look at a dictionary to define "funds" in *Clark*, but consistent with the principle expressed in *Yates*, that definition aligns with how ordinary people

8

would understand that term. *Petix*, at 8. From one source to another, the exact meaning of "funds" might change a little, but the uses of the term in the United States Code and in everyday life have in common the description that the Supreme Court used: designated or allocated sums of money. *Petix*, at 9.

The ordinary understanding of "funds," with its reference to "money," necessarily brings the Court to an assessment of that other term. Legal authorities abound with uses of the term "money." *Petix*, at 9. The Constitution gave Congress the enumerated power "[t]o coin Money, [and to] regulate the Value thereof." U.S. Const. art. I, § 8, cl. 5. The United States Code, under a subchapter titled "Monetary System," has a definition of legal tender that covers coins, currency, and notes. 31 U.S.C. § 5103. *Petix*, at 9. Another provision of Title 31 refers to "money" and "public money" as something that can be deposited in the United States Treasury. 31 U.S.C. § 3302. *Petix*, at 9. A portion of the tax code refers to estate transfers that occur "for a consideration in money or money's worth." 26 U.S.C. § 2043. Portions of the judicial code refer to "receiving and paying over money" compared to "disposing of such property," 28 U.S.C. § 1921(c)(1); and to plural "moneys paid into any court of the United States," 28 U.S.C. § 2041.

What all of the above examples have in common, though, is the involvement of a sovereign. *Petix*, at 9. Across all of the legal authorities that make some reference to money, and despite new technologies that have emerged over the years within the United States monetary system, there has been a consistent understanding that money is not just any financial instrument or medium of exchange that people can devise on their own. "Money," in its common use, is some kind of financial instrument or medium of exchange that is assessed value, made uniform, regulated, and protected *by sovereign power*. *Petix*, at 9-10; citing e.g., David G. Oedel, *Why Regulate Cybermoney?*, 46 Am. U. L. Rev. 1075, 1077 (1997) ("[I]n the background of most

9

functional definitions are suggestions that money serves as a tool for governments to exercise macroeconomic control and to channel financial commerce along preferred routes.") (citations omitted). Criminal monetary statutes exist in part to protect a uniform, regulated monetary system; that is, they aim to prevent any implicit lending of sovereign power or legitimacy to criminal enterprises. Petix, at 11: citing e.g., *United States v. Fernando*, 745 F.2d 1328, 1330 (10th Cir. 1984)

The above context demonstrates that Bitcoin is not "money" as people ordinarily understand that term. *Petix*, at 12. Bitcoin operates as a medium of exchange like cash but does not issue from or enjoy the protection of any sovereign; in fact, the whole point of Bitcoin is to escape any entanglement with sovereign governments. *Petix*, at 12. Bitcoins themselves are simply computer files generated through a ledger system that operates on block chain technology. *See, e.g.,* Shahla Hazratjee, *Bitcoin: The Trade of Digital Signatures*, 41 T. Marshall L. Rev. 55, 59 (2015) ("The Bitcoin system operates as a self-regulated online ledger of transactions. These transactions are currently denoted by the change of ownership in Coins. This ledger, also referred to as the 'block chain,' has certain built-in mechanisms that eradicate the risk of double spending or tampering with the master record of all transactions.").

Like marbles, Beanie Babies™, or Pokémon™ trading cards, bitcoins have value exclusively to the extent that people at any given time choose privately to assign them value. *Petix*, at 12. No governmental mechanisms assist with valuation or price stabilization, which likely explains why Bitcoin value fluctuates much more than that of the typical government-backed fiat currency. *Petix*, at 12; citing, e.g., Jennifer R. Bagosy, *Controversial Currency: Accepting Bitcoin As Payment for Legal Fees*, Orange County Lawyer, June 2014, at 42 ("Bitcoin has other key features that make it very different from other methods of payment. First,

the value of Bitcoin is highly volatile. In January 2013, one Bitcoin was worth about $13. By December 4, 2013, the price had skyrocketed to $1,061 per Bitcoin. By April 15, 2014, the value had dropped to $500 per Bitcoin.") (citation omitted).

As for experiences in daily life, ordinary people do not receive salaries in bitcoins, cannot deposit them at their local banks, and cannot use them to pay bills:

> Bitcoin may have some attributes in common with what we commonly refer to as money, but differ in many important aspects. While Bitcoin can be exchanged for items of value, they are not a commonly used means of exchange. They are accepted by some but not by all merchants or service providers. The value of Bitcoin fluctuates wildly and has been estimated to be eighteen times greater than the U.S. dollar. Their high volatility is explained by scholars as due to their insufficient liquidity, the uncertainty of future value, and the lack of a stabilization mechanism. With such volatility they have a limited ability to act as a store of value, another important attribute of money. *Petix*, at 13: citing, *State v. Espinoza*, No. F14-2923, slip op. at 5–6 (Fla. 11th Judicial Cir. Ct. July 22, 2016) (unpublisheddecision).

The Court cannot rule out the possibility that widespread, ordinary use of bitcoins as money could occur someday, but that simply is not the case now. *Petix*, at 13.

### *The Indictment Should Be Dismissed In This Case Because Bitcoin Is Not Money*

In this matter, there might be ways to prosecute the Defendants if they had conspired with others to engage in activity that violated other criminal statutes. However, just like the Defendant in *Petix*, there was no evidence that the Defendants engaged in any other criminal activity, such as money laundering, etc. In this case, the Government is prosecuting the Defendants only for failing *to register* as a money transmitting business. The Government's *only* theory of prosecution requires treating Bitcoin as money in the ordinary understanding of that term. Just as in *Petix*, because Bitcoin does not fit an ordinary understanding of the term "money," the Defendants cannot have violated Section 1960 in its current form. As a matter of

11

Case 2:15-cr-00198-GZS Document 80 Filed 04/27/17 Page 12 of 14 PageID #: 238

law, then, Count One fails no matter what amount of factual evidence the Government might have at its disposal. *Petix*, at 13.

Most importantly, when the federal Government does, in fact, define what Bitcoin is, the Government defines such as *property*. The IRS has specifically published notices regarding how Bitcoin is defined by the federal government. In the publication named, "IRS Virtual Currency Guidance: Virtual Currency Is Treated as Property for U.S. federal Tax Purposes: General Rules for Property Transactions Apply", IR-2014-36, March. 25, 2014[9], the IRS specifically states that:

> In some environments, virtual currency operates like "real" currency -- i.e., the coin and paper money of the United States or of any other country that is designated as legal tender, circulates, and is customarily used and accepted as a medium of exchange in the country of issuance -- ***but it does not have legal tender status in any jurisdiction***.
>
> The notice provides that ***virtual currency is treated as property*** for U.S. federal tax purposes. General tax principles that apply to property transactions apply to transactions using virtual currency. *IR-2014-36, March. 25, 2014*.

As outlined in IRS Notice 2014-21, the IRS identifies Bitcoin as an example of virtual currency and actually distinguishes Bitcoin from money, currency, or legal tender.[10] There is no question that the Defendants actually relied upon these IRS publications when determining whether they needed to register under Section 160. These IRS publications are still in full force and effect, and have not been repealed.

In this case the Government is attempting to subjectively define Bitcoin as money in order to find a way to pursue an action against the Defendants under Section 160. There should not be any guesswork involved in defining Bitcoin. As indicated above, the federal Government has specifically designated Bitcoin as property. In in efforts to resolve this discrepancy, this Court must side with the Defendants and dismiss the case. The Government should not be

---

[9] See attached *IR-2014-36, March. 25, 2014*.
[10] See attached *IRS Notice 2014-21*.

allowed to continue this shell game, and be permitted to redefine what Bitcoin is in order to prosecute individuals such as the Defendants.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully move this Honorable Court to dismiss the Indictment in this case.

Dated at Portland, Maine this 27th day of April, 2017.

>Respectfully submitted,
>
> /s/ Roger F. Brunelle Jr.
>Roger F. Brunelle Jr., Esq.
>75 Pearl Street, 2nd Floor
>Portland, ME 04101
>207-699-4357
>Roger@rbrunellelaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2017, I electronically filed Defendants' Motion to Dismiss, with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Michael Conley, Assistant U. S. Attorney
U.S. Department of Justice
U.S. Attorney's Office
100 Middle Street,
East Tower, 6th Floor
Portland, ME 04104-5018
(Attorney for United States of America)

Dated at Portland, Maine this 27th day of April , 2017.

Respectfully submitted,

/s/ Roger F. Brunelle Jr.
Roger F. Brunelle Jr., Esq.
75 Pearl St., 2nd Floor
Portland, ME 04101
207-699-4357
Roger@rbrunellelaw.com